**NOT FOR PUBLICATION** **CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LYNNE FEIGENBAUM, | : <br> : |
| Plaintiff, | : Civil Case No. 06-1075 (FSH) <br> : |
| v. | : **OPINION** <br> : |
| MERRILL LYNCH & CO., INC. BASIC LONG TERM DISABILITY PLAN, *et al.*, | : Date: August 2, 2007 <br> : <br> : |
| Defendants. | : <br> : |

**HOCHBERG, District Judge**

This matter comes before this Court upon the parties' cross motions for summary judgment[1] and the Court's May 14, 2007 oral argument on these motions.

**I.   Factual Background**[2]

Plaintiff Lynne Feigenbaum seeks benefits pursuant to the Merrill Lynch employee welfare benefit plan, which is governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 *et seq* ("ERISA"). Feigenbaum alleges that she was totally disabled from her occupation as a financial analyst since July 26, 2000 as a result of her vertigo/dizziness. As an employee of Merrill Lynch since December 9, 1987, Feigenbaum was a

---

[1] In a May 8, 2007 letter to this Court, Plaintiff withdrew Count Three of Plaintiff's Complaint with prejudice.

[2] This factual background summary is taken from uncontested facts in Plaintiff's and Defendants' L. Civ. R. 56.1 Statements of Material Facts.

1

participant in the Basic and Supplemental Long Term Disability ("LTD") plans.[3]  Defendant MetLife is the claims administrator for both the Basic LTD Plan and the Supplemental LTD Plan.  The Basic LTD Plan is self-funded by Defendant Merrill Lynch & Co., Inc. ("Merrill Lynch"), and the Supplemental LTD Plan is insured through a policy of insurance issued by Defendant MetLife.  Plaintiff's last day of work was July 26, 2000, and her Long Term Disability Employee Personal Profile states that her job required computer usage and walking for two hours a day, standing for two hours a day, and sitting for three to four hours a day.

Defendants paid Basic and Supplemental benefits from January 27, 2001 through January 21, 2004.  Plaintiff had provided Defendants permission on January 3, 2001 to receive and review Plaintiff's medical records, and on December 9, 2003, a nurse consultant recommended that an independent physician consultant review be performed.  Accordingly, Defendant MetLife referred Plaintiff's records on December 24, 2003 to an independent physician consultant, Dr. Amy Hopkins, for a review.[4]  Dr. Hopkins issued a report on December 24, 2003 which

---

[3] The Basic LTD Plan states that "Basic LTD payments begin after you are totally disabled for six months and the claim administrator approves your application for benefits.  The six-month waiting period begins on the first day you are not at work because of your total disability.  You are considered totally disabled if you are unable to perform all of the regular duties of the Merrill Lynch job you had before your disability began and are under the continuance care of a doctor."  The Supplemental LTD Plan states that "Supplemental LTD plan benefits generally begin when your basic LTD plan benefits do.  You must be totally disabled as determined by the supplemental LTD plan insurance company.  To be considered totally disabled, you must be unable to perform all of the regular duties of the Merrill Lynch job you had before your disability began and be under the continuous care of a doctor.  See the Glossary for the definition of doctor.  Your eligibility to receive a benefit is subject to approval by the insurance company for the supplemental LTD plan.  It may be possible to qualify for basic LTD plan benefits and not qualify for supplemental LTD plan benefits."

[4] Dr. Hopkins has a M.D., M.P.H., and Ph.D.; is board certified in Internal Medicine and Occupational Medicine; and is a Fellow of the American College of Occupational and Environmental Medicine.

concluded that Plaintiff's vertigo was "largely self-reporting" and that her testing was "largely unremarkable."[5] Dr. Hopkins' report was sent to Plaintiff's treating physician, Dr. Frank Alario, on December 30, 2003 with a cover letter from MetLife that stated: "On December 10, 2003, we referred your patient's medical record to our Board-Certified Independent Physician Consultant for a file review. We are forwarding her report to you for your comments. There is no physical impairment that was objectively documented which would preclude the above claimant from returning to work, fulltime in her own job with no restrictions and limitations. If you do not agree with this conclusion, please fax your reply and any new medical documentation by January 30, 2004. If we do not hear from you by this time, we will assume that you agree with this decision." Defendant MetLife received no response from Dr. Alario, and Defendant MetLife

---

[5] Dr. Hopkins' report states that: "In terms of EE [employee]'s vertigo, it has been largely self-reported, though there have been some nonspecific findings over the course of the last several years. EE [employee] has had some improvement with two vestibular nerve sections, but still reports intermittent vertigo. EE [employee] has had many course of vestibular therapy without clear improvement. Testing has been largely unremarkable. Of note are the numerous mentions of evidence of non-organic behavior in this record, consistent w/ somatization or malingering. Dr. Katz documented bizarre eye movements an astasia/abasia gait, and falling backwards on Romberg testing. Ms. McCall documented marked differences between observed and unobserved testing, and sx [symptoms] exaggeration. Dr. Kupersmith documented falling backwards on Romberg testing. Dr. Kramer documented changes on infrared video oculography which could be voluntary. He also noted that EE [employee] wanted to get pregnant, which would be surprising on EE's [employee's] part if she was truly as disabled as she claimed to be. It is not clear why EE [employee] apparently feels she can take care of an infant, in the absence of any indication that she would be turning care over to someone else, but not work. These observations give strong support to the presence of a non-organic behavior contributing to it even causing EE's sx [employee's symptoms]. It is surprising that computerized dynamics posturography was not documented as having been performed, since it is the gold standard for determining if someone's vertigo has a physiological basis and is actually impairing him or her. Without this test, EE's [employee's] vertigo remains largely as self-reported sx [symptoms] w/ no definite evidence of objective imbalance when taking into account the inconsistent findings on exams. The actual objective findings on exam do not support the presence of a significant balance disorder which would prevent EE [employee] from performing sedentary work activities, such as her own occupation, on a full-time basis, without restrictions and limitations."

denied Plaintiff's claim for continuing benefits on January 21, 2004.[6]  Defendant MetLife's January 21, 2004 denial noted that Plaintiff's vertigo "has been largely self-reported" and that "[t]here is no objective evidence that your vertigo has a physiological basis and is actually impairing you."  The letter also states that "The actual objective findings on exam do not support the presence of a significant balance disorder which would prevent you from performing sedentary work activities, such as your own occupation, on a full-time basis, without restrictions or limitations."  The denial letter concluded that "[n]o documentation was submitted to indicate any impairments that would prevent you from performing your occupation" and that "[y]ou no longer meet the definition of disability."

Plaintiff appealed the denial of benefits by letter dated February 24, 2004.  Plaintiff's letter states that "[f]ollowing my two vestibular nerve sections, I still experience dizziness, vision distortions and headaches brought on by minimal computer usage and reading.  These problems

---

[6] The January 21, 2004 letter from Defendant MetLife to Plaintiff informed Plaintiff how to appeal the decision:
"You may appeal this decision by sending a written request for appeal to MetLife Disability...within 180 days after you receive this denial letter.  Please include in your appeal letter the reason(s) you believe the claim was improperly denied, and submit any additional comments, documents, records, or other information relating to your claim that you deem appropriate for us to give your appeal proper consideration.  Upon request, MetLife will provide you with a copy of the documents, records, or other information we have that are relevant to your claim and identify any medical or vocational expert(s) whose advice was obtained in connection with your claim...For us to reconsider your claim you need to provide us with medical evidence from the doctor(s) treating you for a condition that indicates you are under the appropriate care and treatment and objective medical information to support your inability to perform the duties of your occupation.  Office notes from your treating doctors and information regarding your functional impairments and work restrictions must be provided."
The January 21, 2004 letter also noted that "MetLife will evaluate all the information and advise you of our determination of your appeal within 45 days after we receive your written request for appeal.  If there are special circumstances requiring additional time to complete our review, we may take up to an additional 45 days, but only after notifying you of the special circumstances in writing."

have kept me from driving and returning to work."[7]  Plaintiff's letter noted that she "will be undergoing an MRI and extensive vision exam to ascertain if anything additional is causing the existing problem."  Plaintiff attached her physical therapy records from July 2003, which had been faxed to Merrill Lynch Disability on September 15, 2003 and were included in the record when the claims administrator denied Plaintiff's LTD benefits on January 21, 2004.  Plaintiff also attached a February 23, 2004 letter from Dr. Alario, Plaintiff's treating physician, which stated that he supported her right to long-term disability benefits.[8]  Plaintiff did not submit any other documentation to Defendant MetLife.

Defendant MetLife denied Plaintiff's appeal by letter dated April 19, 2004.  The denial letter noted that a Board certified independent physician consultant [Dr. John Rogers] had reviewed the documentation, including Plaintiff's submissions with her appeal, and that "the

---

[7] Plaintiff's letter also states that "Per Dr. Kramers' suggestion I went back to vestibular therapy from July 2003 to August 2003 (records attached) to address the above problems and try to correct them.  These sessions were unsuccessful because every time I tried to do the requested vestibular exercise I would wind up dizzy and lightheaded and spend the next twenty-four hours on the couch unable to function."

[8] Dr. Alario's letter stated: "[Feigenbaum] is unable to return to work due to chronic vertigo and unstable eye movements.  Ms. Feigenbaum is unable to drive due to the above-mentioned symptoms.  The vertigo and the presence of a delayed eye focus when her head or eyes move from side to side or up and down, prevents her from reading and working on the computer for more than an estimated one hour period at a time.  These complaints also cause her comprehension and retention problems.  The patient recently started Strattera 4 mg. at bedtime for attention deficit complaints.  The above tasks are a main function of her employment, and at this time she is unable to perform these tasks.  The patient is also suffering from intermittent headaches and numbness/tingling in her extremities.  Ms. Feigenbaum is undergoing further testing to ascertain any possible causes of the above symptoms, including an MRI, eye exam, and will be seeing a neuro-opthomologist.  Due to the lack of improvement with various medical treatments rendered, it is my recommendation that she must remain on disability.  Please feel free to contact me if you have questions in this matter."

documentation does not support an inability to perform the duties of your sedentary job as of January 22, 2004 onward."[9]

**II.     Analysis**

**A.     Summary Judgment Standard**

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmovant. *Anderson*, 477 U.S. at 248 (1986); *In re Headquarters Dodge*, 13 F.3d 674, 679 (3d Cir. 1993).

All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The party

---

[9] The April 19, 2004 denial states that "The physician [consultant, Dr. John Rogers] noted that at no time have you exhibited well-documented observed organic symptoms...The physician concluded that a [February 23, 2004] letter from Dr. Alario [Plaintiff's treating physician] furnished for appeal consideration does not contain objective evidence of continued functional impairments that would preclude your ability to perform at a sedentary level of exertion consistent with your own occupation. Dr. Alario stated your (sic) are symptomatic and would be undergoing further testing including an MRI and an eye examination. Based on the lack of any further objective data, there is still no documentation which would clearly substantiate an organic cause for your dizziness and abnormal eye motion."

seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323. This requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the non-moving party has not shown the requisite facts relating to an essential element of an issue for which it bears the burden. *Id.* at 322-23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the non-moving party. To avoid summary judgment, the non-moving party must demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Miller*, 843 F.2d at 143; *see also Celotex Corp.*, 477 U.S. at 324.

If a moving party satisfies its initial burden of establishing a *prima facie* case for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 *(quoting First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The Court also uses this standard when cross-motions have been filed. *Weissman v. U.S. Postal Serv.*, 19 F.Supp. 2d 254, 259 (D.N.J. 1998) (*citing Southeastern Transp. Auth. v. Pennsylvania Pub. Utility Comm'n*, 826 F.Supp. 1506, 1512 (E.D.Pa.1993), *aff'd*, 27 F.3d 558 (3d Cir.1994)).

**B.     Standard of Review**

Where an ERISA-governed benefit plan gives the plan administrator or fiduciary discretion in "interpret[ing] the plan and making benefits determinations," as Defendants have in this case, a court reviewing a benefits denial employs an "arbitrary and capricious" standard.

*Skretvedt v. E.I. Dupont De Nemours & Co.*, 268 F.3d 167, 173-74 (3d Cir. 2001). Under this standard, the reviewing court must defer to the administrator unless its decision was "'without reason, unsupported by substantial evidence, or erroneous as a matter of law.'" *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 392 (3d Cir. 2000) (noting that a plan administrator's decision is supported by substantial evidence if the evidence is sufficient for a reasonable person to agree). The arbitrary and capricious standard is then heightened where the structure of a plan presents an inherent conflict of interest or where specific facts in evidence call the impartiality of the administrator into question. *Pinto*, 214 F.3d at 383-84; *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 442 (3d Cir. 2001); *Kosiba v. Merck & Co.*, 384 F.3d 58, 65-66 (3d Cir. 2004).

For instance, the Third Circuit has found that the potential for a conflict of interest exists where an employer both funds and administers a plan. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc.*, 298 F.3d 191, 197 (3d Cir. 2002). In *Pinto*, the Third Circuit established a "sliding scale approach" to use in such cases, intensifying the degree of scrutiny to match the degree of the conflict.[10] 214 F.3d at 391. However, even if the court applies a heightened arbitrary and capricious standard of review, the Third Circuit has held that "a court may not substitute its own judgment for that of the plan administrators." *Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 256 (3d Cir. 2004) (*citing Smathers*, 298 F.3d at 199). Regardless of which standard a court applies, it "must base its ultimate determination on the record before the plan administrator," *Kosiba*, 384 F.3d at 69. The Court may only overturn a

---

[10] The factors to consider when determining the degree of the conflict include (1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the current status of the fiduciary (i.e. whether the decisionmaker is a current employer, former employer, or insurer). *See Kosiba*, 384 F.3d at 64.

plan administrator's decision "if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." *Smathers*, 298 F.3d at 199.

In this case, Defendant MetLife is the claims administrator for both the Basic LTD Plan and the Supplemental LTD Plan. The Basic LTD Plan is self-funded by Defendant Merrill Lynch, and the Supplemental LTD Plan is insured through a policy of insurance issued by Defendant MetLife. Because the Basic LTD Plan is administered and funded by distinct entities, the Court will apply an arbitrary and capricious standard when considering the denial of Plaintiff's Basic LTD Plan.[11] *See Skretvedt*, 268 F.3d at 173-174. Since MetLife is both the claims administrator and responsible for paying benefits with respect to the Supplemental LTD Plan, the Court will apply a heightened arbitrary and capricious standard when considering the denial of Plaintiff's Supplemental LTD Plan. *See Pinto*, 214 F.3d at 387-388 and *Smathers*, 298 F.3d at 197.

---

[11] Plaintiff argues that the Court should use a heightened standard of review because Defendant MetLife (1) utilized the services of physician consultants who have no experience or training in vertigo and balance disorders; (2) incorrectly required objective evidence of disability; (3) improperly failed to have the consulting physicians perform a person-to-person examination of Plaintiff; (4) improperly failed to advise Plaintiff of the need to secure posturography test results; (5) did not secure any surreptitious surveillance that Plaintiff is a malinger; and (6) failed to acquire a proper vocational assessment. These arguments are without merit as applied in this case. It is not arbitrary and capricious for a claims administrator to require objective evidence showing the physical limitations imposed by Plaintiff's vertigo. *See Boardman v. Prudential Ins. Co. of America*, 337 F.3d 9, 17 (1st Cir. 2003). Further, there is no ERISA requirement that an in-person evaluation or surreptitious surveillance be performed.

C.      **Record before the Claims Administrator**

Among other documents, the record before the claims administrator included the following information:

- <u>Documents from 2000</u>:  Records from JFK Johnson Rehabilitation Institute for physical therapy occurring on ten days between November 2000 and January 2001 (129-147); various correspondence from doctors from February to August 2000 (120; 122-123; 124-125; 126-127; 148-152; 270-271; 305; 306-308); a January 3, 2001 Long Term Disability Employee Personal Profile (117-119);
- <u>Documents from 2001</u>: Dr. Alario's March 26, 2001 Attending Physician Statement (114-115); Progress notes from Atlantic Coast Ear Specialists, P.C., from February 5, 2001 to June 15, 2001 (157-161); Dr. Alario's medical records from November 1996 to March 2001 (179-230); Medical literature regarding vertigo (231-233); Office visit notes from Atlantic Coast Ear Specialists, P.C. from February 5, 2001 to June 15, 2001 (264-268); May 11, 2001 correspondence from Mark J. Kupersmith, M.D. to Paul Hammerschlag, M.D., regarding a neuro-ophthalmic evaluation (236-237); July 2, 2001 correspondence from Dr. Alario to HMO Blue requesting authorization for immediate antibiotic intravenous therapy (269); JFK Johnson Rehabilitation Institute notes of physical therapy occurring on July 16, 2001, July 26, 2001, and August 27, 2001 (238-242); Updated medical records from Dr. Alario (for August 22, 2001, July 2, 2001, and July 23, 2001) and corresponding lab results (244-259); September 5, 2001 request for medical records from Merrill Lynch to Dr. Alario (243); October 22, 2001 Physical therapy records from JFK Johnson Rehabilitation Institute (260-263);
- <u>Documents from 2002</u>:  Physical therapy records from JFK Johnson Rehabilitation Institute from March 14, 2002 to April 4, 2002 (272-288);
- <u>Documents from 2003</u>:  June 12, 2003 Office note of Phillip Kramer, M.D. summarizing examination and attaching a blank Physical Capacities Evaluation stating, "I am not qualified to make this evaluation" (084-086); July 30, 2003 JFK Johnson Rehabilitation Institute Physical Therapy Vestibular Evaluation (289-291); September 5, 2003 request for Plaintiff's physical therapy records from Merrill Lynch (338);
- <u>Documents Relating to MetLife's 2004 Termination of Plaintiff's LTD benefits</u>: December 24, 2003 Physician Consultant Review report from Independent Physician Consultant Dr. Hopkins (075-078); fax of report to Dr. Frank Alario (Plaintiff's treating physician) (068-074); Defendant MetLife's January 21, 2004 termination letter (065-067); Plaintiff's February 24, 2004 appeal (337); Independent Physician Consultant Dr. Rodgers' April 14, 2004 report (61-62); and Defendant MetLife's April 19, 2004 denial of Plaintiff's appeal.

10

**D.     Administrator's Decision to Deny Benefits**

Plaintiff argues that Defendant MetLife wrongfully terminated her Basic and Supplemental LTD benefits.  The Court "must base its ultimate determination on the record before the plan administrator," *Kosiba*, 384 F.3d at 69, and the Court may only overturn a plan administrator's decision "if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." *Smathers*, 298 F.3d at 199.  As discussed above, the Court will review Defendants' denial of Plaintiff's Basic LTD benefits under an arbitrary and capricious standard and its denial of Plaintiff's Supplemental LTD benefits under a heightened arbitrary and capricious standard.

After carefully considering the documents in the administrative record and applying the above standard of review, the Court holds that Defendants' denial of Plaintiff's Basic LTD and Supplemental benefits was not arbitrary and capricious.  MetLife's denial of Plaintiff's LTD benefits was not "'without reason, unsupported by substantial evidence, or erroneous as a matter of law.'" *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 392 (3d Cir. 2000).  In its January 21, 2004 denial letter, Defendants noted the lack of objective evidence of Plaintiff's condition in her file and highlighted the December 24, 2003 report of Dr. Amy Hopkins, an independent physician consultant, which noted that Plaintiff's vertigo was "largely self-reporting;" that her testing was "largely unremarkable;" and that "[o]f note are the numerous mentions of evidence of non-organic behavior in this record, consistent w/ somatization or malingering."  Although Defendant MetLife highlighted that it did not have objective evidence of Plaintiff's condition, Plaintiff's February 24, 2004 appeal did not provide any objective medical evidence.

11

Plaintiff's appeal included a letter from Plaintiff describing her symptoms; old physical therapy records from July 2003 which had been faxed to Merrill Lynch Disability on September 15, 2003 and had already been considered when the claims administrator denied Plaintiff's LTD benefits on January 21, 2004; and a February 23, 2004 ten-line letter from Dr. Alario, Plaintiff's treating physician, which summarized Plaintiff's symptoms and stated that objective testing would be done, but not stating the conclusions of any objective testing that had actually been done.  Although Dr. Alario suggested that Plaintiff would be undergoing additional tests, Plaintiff did not submit any further test results, did not request additional time in order to submit any results, and did not provide any submission to Defendant MetLife indicating when Plaintiff would be able to provide such additional documentation.

MetLife's April 19, 2004 denial letter of Plaintiff's appeal noted that a Board certified independent physician consultant, Dr. John Rogers, had reviewed the documentation, including Plaintiff's submissions, and had concluded that "[b]ased on the lack of any further objective data, there is still no documentation which would clearly substantiate an organic cause for your dizziness and abnormal eye motion."[12]  The letter stated that "the documentation does not support an inability to perform the duties of your sedentary job as of January 22, 2004 onward."

---

[12] Defendants' January 21, 2004 initial denial letter to Plaintiff stated that "MetLife will evaluate all the information and advise you of our determination of your appeal within 45 days after we receive your written request for appeal.  If there are special circumstances requiring additional time to complete our review, we may take up to an additional 45 days, but only after notifying you of the special circumstances in writing."  Plaintiff submitted her appeal on February 24, 2004, and Defendants denied the appeal on April 19, 2004, more than 45 days later.

**III.     CONCLUSION**

Defendants' motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied.[13]  An appropriate order will issue.

/s/ Faith S. Hochberg

Hon. Faith S. Hochberg, U.S.D.J.

---

[13] This case is distinguishable from *Shah v. Broadspire Services, Inc., et al.*, Civil Action No. 06-3106, for which this Court granted Plaintiff Shah's summary judgment motion today. There, the Claims Review Committee based its denial of Plaintiff Shah's disability benefits on an Employability Assessment which failed to consider Plaintiff's physiological limitations, as found by Plaintiff's doctor as well as Defendants' own exercise physiologist, in determining which sedentary jobs Plaintiff could actually do.